IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RANDY L. MARTINEZ,**

        **Plaintiff,**

vs.                                                            Civ. No.  10-652 JH/WDS

**OFFICER MARVIN LUJAN and
NEW MEXICO DEPARTMENT OF
PUBLIC SAFETY,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *State Defendants' Motion for Partial Summary Judgment No. I* [Doc. No. 12]. In the motion, Defendant Lujan asserts the defense of qualified immunity in response to Plaintiff's claims under 42 U.S.C. § 1983 for unreasonable seizure, malicious prosecution, false imprisonment, and wrongful arrest under the Fourth Amendment to the United States constitution. After reviewing the arguments of counsel, the evidence provided by the parties, and the applicable legal authorities, the Court concludes that the motion should be granted, and summary judgment should be entered in favor of Defendants on these claims.

## LEGAL STANDARD

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (quotation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably." *Id*. "Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the defendant asserts "the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test by showing (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009) (quotations omitted).  A plaintiff's failure to meet either requirement requires the court to grant summary judgment in favor of the defendant. *See Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009). The court must construe the facts in the light most favorable to the plaintiff as the nonmoving party to determine whether he has met his burden of establishing a clearly established constitutional violation. *Scott v. Harris*, 550 U.S. 372, 378, 380, 127 S. Ct. 1769 (2007).  Even so, "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record. . . ." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## FACTS

Plaintiff came forward with no admissible evidence in support of his claims as required by Rule 56 of the Federal Rules of Civil Procedure. Thus, the Court views the evidence provided by the Defendants (including the video recording of the stop and Defendant Lujan's affidavit) in the light most favorable to the Plaintiff. The majority of the facts are undisputed.

On Saturday, July 5, 2008, just after 1:00 a.m., Defendant Marvin Lujan, an officer with the New Mexico State Police, was driving north on New Mexico Avenue in Las Vegas, New Mexico. Lujan saw the Plaintiff, Randy Martinez, driving 40 miles per hour, which was ten miles per hour above the posted speed limit. Lujan pulled over Martinez, whose wife accompanied him in the car.

2

Lujan approached Martinez and asked him to produce his license, registration and proof of insurance. Then, Lujan asked Martinez if he had been drinking, which Martinez denied. However, Lujan believed that he could smell the odor of alcohol emanating from the car. Lujan asked Martinez where he was coming from, and Martinez replied that he had been at his sister's house. Lujan asked Martinez to step out of the vehicle, and he complied. He then asked Martinez to spit out his chewing gum because, based on his training and experience, Lujan believes that people often use gum to mask the odor of alcohol on their breath. Again, Lujan asked Martinez if he had been drinking, and Martinez admitted that he had consumed one beer.

Then, with Martinez' consent, Lujan conducted three standardized field sobriety tests. First, Lujan performed the horizontal gaze nystagmus test, which required Martinez to follow Lujan's eyes with his finger. When performing the test, Lujan observed nystagmus in both of Martinez' eyes, lack of smooth pursuit, and onset of nystagmus prior to 45 degrees in both eyes. These are indicators of impairment. Next, Lujan performed the walk-and-turn test on Martinez, which required Martinez to listen to and follow directions while performing simple physical movements. Specifically, Lujan instructed Martinez to take nine steps, heel to toe, along a straight line. Then, Lujan directed Martinez to turn on one foot and return in the same manner in the opposite direction. Lujan explained and demonstrated the test, and then asked Martinez if he understood . Martinez said that he did and then began to perform the test. However, he was unsteady, did not touch heel to toe, and stepped off the line twice. Martinez then asked Lujan how to complete the remaining portion of the test. Martinez turned to the right instead of to the left as he had been instructed to do. Finally, on the return steps Martinez missed heel to toe contact on the eighth step. Based upon these mistakes, Lujan had more evidence that Martinez was impaired. However, Martinez told Lujan that he was not used to the boots he was wearing.

Finally, Lujan administered the one-leg stand test, which like the walk-and-turn test, requires the subject to listen and follow directions while performing simple physical movements. Lujan instructed Martinez to stand with one foot approximately six inches off the ground and to count aloud until told to put his foot down. Lujan explained and demonstrated the test to Martinez, who acknowledged that he understand the instructions. Martinez performed the test, but he reminded Lujan that he had unsteady balance because of his boots. Lujan timed Martinez for 30 seconds and looked for indicators of impairment, including swaying, using arms to balance, hopping, and putting his foot down. Martinez swayed and put his foot down five times during the test, providing additional evidence that he was impaired.[1]

For the third time Lujan asked Martinez if he had been drinking. Again, Martinez said that he had one beer. However, Lujan concluded that Martinez was intoxicated. Accordingly, Lujan handcuffed, searched, and placed Martinez in the back of his patrol car. Lujan then approached Martinez' wife, who was seated in the passenger seat of their car. He asked her if she had been drinking, and she admitted that she had. Lujan returned to his patrol car and read to Martinez the New Mexico Implied Consent Act, which informed him of his rights with respect to breath and blood alcohol testing.[2] Martinez agreed to be tested. Accordingly, Lujan drove Martinez to the New

---

[1] In his response brief, Martinez presents argument from counsel raising questions about the efficacy of the horizontal gaze nystagmus test in light of the fact that Martinez removed his glasses, that due to darkness Lujan flashed his police flashlight in Martinez' face during the test, and that the emergency lights on Lujan's police cruiser may have interfered with Martinez' response to the test. Martinez has come forward with no evidence on these issues, however, instead merely asking the Court to speculate as to their effect on the outcome of the test.

[2] The statute provides that any person who holds a New Mexico driver's license impliedly consents to chemical testing of "his breath or blood or both" administered for the purpose of determining intoxication. NMSA 1978, § 66–8–107(A). A driver may refuse to consent to such testing, but the penalty for doing so is the revocation of the driver's license "for a period of one year or until all conditions for license reinstatement are met, whichever is later." Section

Mexico State Police station in Las Vegas. At around 2:15 a.m., after the mandatory 20-minute deprivation period, Lujan twice administered a breath alcohol test to Martinez.[3] Based upon his observations, Lujan believed that Martinez did not blow into the breath alcohol testing machine properly. Both tests yielded a blood alcohol level of .00. Not convinced of Martinez' sobriety, Lujan transported Martinez to a local hospital for a more reliable blood alcohol test, the results of which would not be available for several days. After the blood draw, Lujan wrote his police report and prepared Martinez' booking paperwork. Lujan also presented Martinez with a citation for his speeding violation. Martinez chose to sign the ticket and pay the fine. Then, Lujan took Martinez to the San Miguel County Detention Center. The record contains no information regarding the length of time that Martinez remained there.

On Monday, July 7, 2008, Lujan filed a criminal complaint against Martinez in magistrate court charging him with driving under the influence of alcohol. At this time, Lujan had not yet obtained the results of Martinez' blood alcohol test. On Friday, July 11, 2008, the Toxicology Bureau of the New Mexico Department of Health determined that Martinez' blood alcohol level was

---

66–8–111(A), (B).

[3] Where a driver consents to testing, the police must administer any tests in accordance with regulations approved by State Laboratory Division ("SLD") of the New Mexico Department of Health. NMSA 1978, § 66–8–107(A); *see State v. Vaughn*, 2005–NMCA–076, ¶ 35, 137 N.M. 674, 114 P.3d 354 (describing SLD's responsibility for test development). SLD promulgated a regulation governing the conduct of breath tests. 7.33.2.12(B)(1) NMAC. The regulation provides, in pertinent part:

> (1) Two breath samples shall be collected and analyzed by certified Operators or Key Operators only, and shall be end expiratory in composition. Breath shall be collected only after the Operator or Key Operator has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample. If during this time the subject eats, drinks or smokes anything, another 20 minutes deprivation period must be initiated. The two breath samples shall be taken not more than 15 minutes apart.

5

.00. The results of his drug test remained pending. However, after July 7, 2008, Lujan had no further involvement with Martinez' case. On September 17, 2008, the district attorney's office filed a Notice of Dismissal of the Criminal Complaint on the grounds that the lab test results showed no alcohol or drugs in Martinez' system.

On July 1, 2010, Martinez filed his Complaint for Money Damages in the First Judicial District Court, State of New Mexico, Rio Arriba County. He asserts claims for violation of his federal constitutional rights to equal protection and due process, his Fourth Amendment rights against malicious prosecution and unlawful seizure, and his rights under the New Mexico constitution. It appears that Martinez may also be asserting claims for the common law torts of malicious abuse of process and negligent supervision, the latter against the New Mexico Department of Public Safety only. On July 12, 2010, the Defendants removed the case to this United States District Court because it presents a federal question.

## DISCUSSION

### I.    PLAINTIFF'S CLAIM FOR UNREASONABLE SEIZURE

Martinez does not challenge the legality of the initial traffic stop for a speeding violation. Rather, he contends that Lujan lacked reasonable suspicion to detain him after the initial stop was over, and then improperly arrested him without probable cause. According to Martinez, Lujan based the arrest on the fact that Martinez was from Chimayo, New Mexico. However, Martinez puts forward no evidence to support this theory.

"As a general rule, once an officer's purpose in a traffic stop based on probable cause or reasonable suspicion is complete, the officer must let the person go." *United States v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999). *See also United States v. Villegas*, 554 F.3d 894, 898 (10th Cir. 2009) ("A driver must be permitted to proceed after a routine traffic stop if a license and registration

6

check reveal no reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes . . . ."). At a stop an officer may "request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004). An officer may also question the driver "about matters both related and unrelated to the purpose of the stop, as long as those questions do not prolong the length of the detention." *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). An officer may detain a driver beyond the scope of the traffic stop if, during the stop, "(1) the officer develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter." *Rosborough*, 366 F.3d at 1148 (quotation and alterations omitted). To determine whether an officer has a reasonable suspicion to detain beyond the scope of the traffic stop, we "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002) (quotations omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. (quotation omitted). While reasonable suspicion cannot be based upon a "mere hunch," it also "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274, 122 S.Ct. 744.

In this case, the Court concludes that Lujan had reasonable suspicion to extend the initial purpose of the traffic stop, and also that Martinez consented to extend the stop. The uncontradicted evidence before the Court is that Martinez was speeding, and while Lujan was conducting the traffic stop, he smelled alcohol coming from Martinez' car. Also uncontradicted is Lujan's testimony that

7

Martinez was chewing gum, and that in Lujan's training and experience drivers often use gum to mask the smell of alcohol on their breath. Finally, after initially denying having anything to drink, Martinez admitted to Lujan that he had consumed one beer. The Tenth Circuit has held that this is enough to support a finding of reasonable suspicion. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) ("Vondrak's statement that he 'had one beer three hours ago' provided McCants with reasonable suspicion to conduct the field sobriety tests, or at the very least provided her with 'arguable reasonable suspicion' entitling her to qualified immunity.") (citing *United States v. Slater*, 411 F.3d 1003, 1004, 1006 (8th Cir. 2005) ("Jones's admission that he had been drinking ['a couple drinks'] earlier that evening gave Officer Perry reasonable suspicion to extend the stop while Jones completed the sobriety tests.")). The Court concludes that, under the totality of the circumstances, the foregoing facts constitute reasonable suspicion to extend the stop in order to further investigate whether or not Martinez was driving under the influence of alcohol. Furthermore, Lujan consented to the extension of the stop. Lujan's uncontradicted affidavit states that Martinez voluntarily agreed to take three field sobriety tests. Accordingly, Martinez' consent further justified the continuation of the traffic stop.

Next, Martinez objects to his arrest, arguing that Lujan lacked probable cause to arrest him for driving under the influence of alcohol. Again, the Court disagrees. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Supreme Court further stated in *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." As the Supreme Court has explained, the substance of probable cause "is a reasonable ground for belief of guilt. . . [I]t has

8

come to mean more than bare suspicion: Probable cause exists where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (internal quotations omitted). Furthermore, the officer's belief of guilt must be particularized with respect to the person to be seized. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). To determine whether Lujan had probable cause to arrest Martinez, the Court must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

   Here, there is no dispute as to the events leading up to Martinez' roadside arrest. First, Martinez was speeding while driving during the early morning hours. Second, Lujan smelled alcohol coming from Martinez' car, and Martinez initially said he had nothing to drink but then later admitted to having a beer. Finally, Lujan saw indicia of impairment on all three field sobriety tests he conducted on Martinez. Based on the foregoing, the Court concludes that after completing the field sobriety tests, Lujan had probable cause to arrest Martinez for driving while under the influence of alcohol. The fact that Lujan later turned out to be wrong about Martinez' state of inebriation is of no relevance to this outcome. The question is whether Lujan had probable cause based upon the facts reasonably known to him at the time of the arrest. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998) (stating that "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity" in a § 1983 warrantless-arrest case

"if a reasonable officer could have believed that probable cause existed to arrest the plaintiff") *quoting Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (further quotation omitted).

Finally, Lujan's subjective motivation for his roadside arrest of Martinez—Lujan's alleged prejudice against drivers from Chimayo, New Mexico—plays no role in the analysis. First, Plaintiff has come forward with no evidence, only argument, to support his theory. Second, even if Martinez had evidence to demonstrate that Lujan arrested him because of where he lived, this would not change the analysis. An officer's actions must be "judged against the totality of the circumstances," and the officer's "subjective motivations are irrelevant to [the] inquiry." *United States v. Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009) (quoting *United States v. Winder*, 557 F.3d 1129, 1133–34 (10th Cir.2009)).

In light of the foregoing, the Court concludes that on the record presently before the Court, Lujan is entitled to qualified immunity on Martinez' claim that Lujan detained him without reasonable suspicion and arrested him without probable cause.

## II.    PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION UNDER § 1983

Martinez argues that when Lujan charged him with driving under the influence, Lujan knew that both breathylizer tests performed at the police station had shown a blood alcohol level of .00%. Accordingly, Martinez contends that Lujan is liable for maliciously prosecuting him for that crime by filing a criminal complaint against him despite the results of those tests.

In the Tenth Circuit, courts must "take[] the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim . . . [T]he ultimate question, [however], [is] whether the plaintiff has proven a constitutional violation." *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996); *see also Wolford v. Lasater*, 78 F.3d 484, 489 (10th

Cir. 1996) ("It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983."). The Tenth Circuit has held that "federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the action originated." *Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004).

The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). Without proof of each of these essential elements, a § 1983 malicious prosecution claim fails as a matter of federal law.

Here, there appears to be no genuine issue of material fact as to whether Lujan initiated the action against Martinez—indeed, Lujan admits that he prepared and filed the criminal complaint. And, because the district attorney dropped the charges against Martinez because the blood test revealed the absence of drugs or alcohol in his system, there can be no doubt but that the charge terminated in Martinez' favor. The third element of the constitutional tort of malicious prosecution is lack of probable cause. As to this element, Martinez bears the burden of showing that Lujan suppressed exculpatory evidence, and that these actions were necessary to the finding of probable cause: that without the allegedly falsified inculpatory evidence, or with the withheld exculpatory evidence, there would have been no probable cause for their continued confinement or prosecution. *Pierce*, 359 F.3d at 1295 (citing *Stewart v. Donges*, 915 F.2d 572, 582 n. 13 (10th Cir. 1990); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); and *Taylor v. Meacham*, 82 F.3d 1556, 1562

(10th Cir. 1996)).

The facts of this case are undisputed. For all the reasons previously stated, Lujan had probable cause to arrest Martinez after the traffic stop and to bring him to the police station on a charge of driving under the influence of alcohol. The question now presented is whether Lujan continued to have probable cause to support the filing of the criminal complaint even after the breathylizer tests showed no alcohol was present on Lujan's breath. After all, "[i]f the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal." *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001). The Court concludes that, on the record currently before the Court, Lujan did have probable cause to file the criminal complaint. First, Lujan's undisputed affidavit states that he administered the breath test to Martinez, and that based on those observations Lujan believed that Martinez did not blow into the machine properly, thereby skewing the results. Therefore, Lujan had reason to question the accuracy of the results of the breath test, particularly in light of Martinez' performance on the field sobriety tests. It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within the state. NMSA 1978, § 66-8-102(A). A person is under the influence of intoxicating liquor if "as a result of drinking liquor [the driver] was less able to the *slightest degree*, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the driver] and the public." UJI 14-4501 NMRA 2001 (emphasis added); *see State v. Deming*, 66 N.M. 175, 180, 344 P.2d 481, 484 (1959); *State v. Sisneros*, 42 N.M. 500, 507, 82 P.2d 274, 278 (1938). The field sobriety tests, combined with Lujan's belief that the breath test had not been performed correctly, could reasonably have led him to believe that Martinez was under the influence of alcohol or some other drug. Only the blood alcohol test, the results of which Lujan did not have, could determine Martinez' blood alcohol level with certainty. Second, the breath test did

not rule out the possibility that Martinez could have had something other than alcohol in his system, such as an illegal drug, that may have impaired his driving. The criminal complaint explicitly charges Martinez with driving "under the influence of an intoxicating liquor *or* drug." *See Titus v. Ahlm*, 2008 WL 4726233, 297 Fed. Appx. 796, 800-01 (10th Cir. 2008) (unpublished) ("Even after Mr. Titus's breath test result was obtained, a reasonable officer could have believed that probable cause existed to charge Mr. Titus. Mr. Titus's argument to the contrary ignores the fact that in New Mexico a person can be charged with DWI for "driving while impaired to the slightest degree.").

Accordingly, despite the results of the breath test, under the evidence presented the Court concludes that Lujan still had probable cause to file the criminal complaint against Martinez. Accordingly, Defendants are entitled to summary judgment on Martinez' claim for malicious prosecution under § 1983.

### III. PLAINTIFF'S CLAIMS FALSE ARREST AND FALSE IMPRISONMENT UNDER § 1983

To recover damages under 42 U.S.C. § 1983 for wrongful arrest, a plaintiff must show he was arrested without probable cause. *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993). Similarly, a person unlawfully arrested without legal process can bring a Fourth Amendment claim sounding in false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095 (2007). Martinez has failed to show how he was wrongfully arrested or falsely imprisoned when he was arrested with probable cause, and he fails to come forward with any evidence that he was imprisoned for an extended period of time after his arrest  As discussed above, on the current record the undisputed material facts are that Lujan had probable cause to arrest Martinez. Therefore, Defendants are entitled to summary judgment on these claims as well.

Having found that Martinez has not met his burden to demonstrated that Lujan violated his constitutional rights in violation of clearly established law,

**IT IS THEREFORE ORDERED** that *State Defendants' Motion for Partial Summary Judgment No. I* [Doc. No. 12] is **GRANTED**, and Defendants are entitled to summary judgment on Plaintiff's constitutional claims for unreasonable seizure, malicious prosecution, false imprisonment, and wrongful arrest.

_____
UNITED STATES DISTRICT JUDGE